**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DORA BUSTAMANTE** | § | |
| | § | |
| **v.** | § | **A-09-CA-745-LY** |
| | § | |
| **HILL COUNTRY MEMORIAL** | § | |
| **HOSPITAL, INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT COURT

Before the Court are:  Defendants' Motion for Summary Judgment (Clerk's Doc. No. 18)

filed June 11, 2010; Plaintiff's Response (Clerk's Doc. No. 19) filed June 22, 2010; and Defendant's

Reply (Clerk's Doc. No. 22) filed July 6, 2010.   The District Court referred these motions to the

undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A),

Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United

States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to

United States Magistrate Judges.   After reviewing the parties' briefs, relevant case law, as well as

the entire case file, the undersigned submits the following Report and Recommendation to the

District Court.

**I.  FACTUAL BACKGROUND**

**A.        General Background**

Plaintiff Dora Bustamante ("Plaintiff" or "Bustamante") was employed as a clerk in the Hill

Country Memorial Hospital ("HCMH") business office when she resigned in 2009.   In 2006,

Plaintiff  was hired as an MRI registrar by Melissa Porter. *See* Plaintiff's Depo. at p. 18.   She was

transferred to the admitting department in August 2007.  *Id.* at p. 18. That position involved the pre-certification of patients.  *Id.*  Plaintiff received a three percent pay raise after approximately fourteen months of employment.  *Id.* at p. 86.  In November of 2007 Plaintiff was transferred to the business office in the position of administrative clerk.  She testified she was not sure of her own title.  *Id.* at p. 21.  Plaintiff received a twelve percent raise at this time.  *Id.* at p. 87.  Plaintiff testified that the receptionist and cashier were classified as administrative clerks, that she did not know the difference in the titles, but in her opinion there must have been a difference in pay.  *Id.* at p. 23-24.  In her position in the business office, Plaintiff compiled collections reports and the uncompensated care applications.  *Id.* at p. 26.  In October of 2008, Plaintiff filed a charge with the EEOC alleging age, and national origin discrimination against her employer HCMH.  Defendant's Exhibit 2.  In December of 2008, Plaintiff received a performance review and 2.5 percent raise.  *Id.* at p. 88.  She worked in the administrative clerk position until she resigned in March of 2009.  Plaintiff claims that she  resigned because she took a five week leave for hernia surgery, and after she came back was expected to complete her backlog of work in three days without help from other employees and without overtime.  *Id.* at p. 130-31, 135.  In March of 2009, Plaintiff amended her EEOC charge alleging retaliation.

Plaintiff alleges she was discriminated against by HCMH on the basis of age, race, and national origin.  She alleges discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the ADEA.  Plaintiff also makes her claims pursuant to 42 U.S.C. § 1981 and claims she suffered intentional infliction of emotional distress.

### B.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence.  *Id.*  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156,

164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**C.    Summary Judgment Evidence**

Ultimately, when the factual arguments are considered, Bustamante is claiming that: (1) she was subjected to a hostile work environment; (2) she was treated differently than other younger, Anglo employees; (3) she was retaliated against for filing her EEOC charge; (4) she was passed over for promotions or transfers; and (5) she suffered intentional infliction of emotional distress. Plaintiff also claims she was constructively discharged, but does not enumerate this as a separate claim. While never explicitly addressed in the Response, it appears that the hostile work environment and disparate treatment claims rely on allegations of both age and race discrimination.[1]

The Court catalogues the facts related to each of Bustamante's claims below. Despite the fact that numerous incidents are described in Defendant's Motion for Summary Judgment, Plaintiff's Deposition, and Plaintiff's EEOC charge, the Court focus on and address only the incidents that

---

[1]Bustamante also claims she was discriminated against because of her national origin. But she was born in the United States. The Court therefore assumes (as the Hospital does in its brief) that this is intended to be a claim of racial, not national origin, discrimination.

Plaintiff relies upon in her Response as it is her burden to make out her prima facie case.  *See Adams,* 465 F.3d at 164.

1.      **Facts related to hostile environment claim**

Bustamante details several incidents that she found discriminatory in her work environment. Plaintiff alleges that she was subjected to racial slurs by two co-workers  – Sue Klinsiek and Neeta Register.  Plaintiff asserts that in 2007, Sue Klinsiek stated to Plaintiff during a potluck luncheon "We Anglos eat first."  Plaintiff's Depo. at p. 57.  Suzanne Hartmann, the business office director, testified that, in the context of discussing whether a patient qualified as indigent, Klinsiek made a comment that a Hispanic patient could get a job at McDonald's.  Hartmann Depo. at p. 116-117. Hartmann stated that she verbally warned Klinsiek that such a statement was inappropriate.  *Id.* at 118.  There was no evidence that Bustamante  was present when Klinsiek made this comment.

Subsequently, Bustamante asserts that Klinsiek sprayed the waiting area with air freshener after a Hispanic patient left and said "your people smell, " which Bustamante reported to Hartmann. *Id.* at p. 123.  Hartmann investigated the remark and determined that Klinsiek actually said "those people smell," and concluded that the remark, while impolite, was not racially motivated.  *Id.* at p. 124, 126.  Hartmann's conclusion was supported by a witness to the incident—Lucinda Lofton, a Hispanic coworker—who stated that Klinsiek did not say that "your people smell."  Cates Depo. at p. 54.

Klinsiek also used the term "wetback" at a business meeting.  *Id.* at p. 118.  It is undisputed that Klinsiek was given a written reprimand and a final warning for this comment.  *Id.* At p. 116. Bustamante also complains that when a customer needing Spanish translation assistance approached the desk, Klinsiek, and later her replacement Neeta Regester,  would say (referring to the customer)

"Mexican" and then tell Bustamante she would have to help them.  Plaintiff's Depo. at p. 121. Bustamante found Klinsiek's use of "Mexican" derogatory.  *Id.* at 122.  Plaintiff asserts that she complained to Missy Porter, who responded in effect that Bustamante did indeed speak Spanish.  *Id.* at p. 122.

### 2.    Facts related to disparate treatment claims

Bustamante alleges that Anglo employees were given credit for her work.  In her deposition, she testified that at a January 2008 retreat, Missy Porter gave another white employee, Annie Frantzen, recognition for "doing a good job collecting for the MRI department."  Plaintiff's Depo. at p. 68-69.  Bustamante also cites an incident in October of 2008, at a meeting where the CEO was present, when Melissa Porter stated that two other younger white employees were the "two up-front collections.  This is who I give credit to for the up-front collections that I've been talking to you about."  *Id.* at p. 72.

Bustamante also claims that her younger, Anglo colleagues received help more readily than she did when the workload was heavy, and that she was questioned for her overtime.  Plaintiff asserts that she was questioned when she stayed late or when she did not take lunch to tend to patient reports, and that her white predecessor was not.  *Id.* at p. 76-77; *see* Exhibit 32 to Cates Deposition. Bustamante also states that other younger Anglo employees were allowed to leave their desks unattended, while she was not.  Plaintiff's Response at p. 8.

Bustamante claims she was demoted in October of 2008. Plaintiff's Depo. at p. 183-84.  In her deposition she testified that "they removed, you know, the title from my name tag,"and that she was given additional responsibilities.   She conceded in her deposition, however, that she was not

given a different title, that her pay was not reduced, and that she remained at the same desk.[2]  *Id.* at p. 185.

### 3.    Facts related to retaliation claim

Bustamante filed an EEOC claim on October 27, 2008.  Plaintiff asserts she was retaliated against when she received a negative performance review on December 29, 2008.  She complains that the review contained two "needs improvement" marks on the issue of working with co-workers and   tardiness, and these issues had never before been brought to her attention.   Plaintiff acknowledges she was given a 2.5 percent raise out of a possible 3.5 percent raise, but complains that the negative remarks were without substantiation.

Plaintiff also complains she was retaliated against when, after returning from a five week leave for hernia surgery, she returned to a full five weeks of accumulated work.  Plaintiff asserts she was expected to complete this work in three days without accumulating any overtime.  Plaintiff argues that other employees were provided backup during absences, including Sue Klinsiek, whom Plaintiff had worked for in her absence, Dawn Lantz, and Neeta Regester.  Plaintiff's Depo. at p. 130.  Plaintiff testified that this overwhelming amount of work led to her resignation.  *Id.* at p. 136.

Plaintiff also complained that in March of 2009 she informed supervisor Jane Hazelett that Neeta Regester stated that "it was so much nicer when Amelia Munoz and I were out of the office, because Jane would treat them to pizza and party goods."   Plaintiff's Depo. at p. 126.  Plaintiff asserts that the following day, Hazelett escorted her to Melissa Porter's office where Hazelett, Porter and Regester tried to pressure her to sign a statement that it was in fact Amelia Munoz who had

---

[2] In her Response, Plaintiff asserts that her desk was moved, which is in direct contradiction to her deposition testimony.  Plaintiffs' Depo. at p. 187.

made those remarks.  *Id.*  Buatamante testified that Porter slammed the desk and announced "We're going to resolve this." *Id.* at p. 128.

### 4.      Facts related to failure to promote

Plaintiff testified in her deposition that she inquired into a financial consultant position in 2007 and never received a response. Plaintiff's Depo. at p. 46.   Similarly, Plaintiff sought information about the admitting coordinator or admitting manager position in November of 2007 and did not receive a response.  *Id.* at p. 39.  Plaintiff also asserts that in September of 2008, Christa Rafiq received a position as patient account representative in the admitting department, and that Plaintiff was "passed up" for this promotion. *See* Plaintiff's Response at p. 6.

Additionally, Plaintiff argues that various positions were not posted and thus she was denied the opportunity to apply for these positions.  Plaintiff asserts that it was protocol for HCMH to not advertise certain positions.  Hartmann Depo. at p. 26.  Plaintiff also asserts that the business office director position was not posted and available for her to apply.  Porter Depo. at p. 46-48.  The summary judgment evidence indicates, however, that at least on one of these occasions, there were applications solicited.  *Id.* at p. 43–46.  Plaintiff also asserts that she did not receive any promotions, evaluations, or increases from March 2007 to January 2009.  Plaintiff's Depo. at p. 87.

## II.  ANALYSIS

For the federal claims, both parties' arguments do not generally differentiate between the age, race, and § 1981 claims.  Accordingly, the Court will follow suit and address the applicable claims of discrimination jointly, while highlighting whenever it is addressing issues unique to a particular cause of action.

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2a (2006).  The ADEA makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1) (2006).  Discrimination claims—including claims under Title VII, section 1981, and the ADEA—are all subjected to the same burden-shifting framework promulgated in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973).  *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (applying *McDonnell* to section 1981); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 n.5 (5th Cir. 1996) (applying *McDonnell* to the ADEA).

Under this analysis, "the plaintiff must [first] establish a prima facie case of discrimination." *Reeves*, 530 U.S. at 142.  This requires Plaintiff to satisfy four elements: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside her protected class or similarly situated employees outside her protected class were treated more favorably under nearly identical circumstances. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).  Under the *McDonnell* framework, once the plaintiff asserts a prima facie case of discrimination, "the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglass Co.*, 411 U.S. at 802.

9

A.       **Hostile Work Environment Claim**

1.       **Procedural bar issues**

Before addressing the merits of Bustamante's allegations, HCMH argues that many of the events giving rise to her hostile environment claim should not be considered, because either they were not contained in her EEOC complaint or they took place too long ago.   The general rule is that if the allegations in the complaint are of the same type as those contained in the EEOC complaint, then a defendant is considered to be on notice of the allegations and they may be considered.   *See Fellows v. Universal Rests. Inc.*, 701 F.2d 447, 448 (5th Cir. 1983) (reversing the district court's dismissal based on incidents not mentioned in the plaintiff's EEOC filings "because the initial charges of discrimination before the EEOC were sufficiently like or related to those asserted . . . to support a Title VII cause of action").   This rule prevents plaintiffs from having to include every possible incident in their complaint to avoid being barred from raising it in their subsequent suit. "Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations."   *Id.* at 451.   While Bustamante did not include in her EEOC complaint every incident that she now relies on for her hostile environment claim, the incidents not disclosed sufficiently resemble those she did include that it is appropriate to consider them.

HCMH also complains that Bustamante relies upon incidents for the hostile environment claim that are barred by the statute of limitations.   EEOC complaints must be filed within 300 days of a violation.   Section 1981 claims must also be timely brought with state law providing the statute of limitations. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 463–66 (1975) ("Federal civil rights actions brought under section 1981, which lack an express statute of limitations, are governed

by the most closely analogous limitations period provided under state law.").  Under Texas law, one must file a discrimination claim under section 1981 within two years of the adverse employment action."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).

This time period may be tolled under certain conditions, and hostile work environment is one of the excepted circumstances.  Bustamante alleges that—at least with regard to the hostile environment claim—HCMH's actions should be considered a continuing violation.  The Supreme Court held that hostile environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Plaintiffs have two ways of proving a continuing violation: (1) producing evidence of a series of discriminatory acts, or (2) demonstrating that the defendant has a policy of discriminating.  *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 475 (5th Cir. 1989).  The events need not be constant.  "[G]aps between the specific incidents . . . do[ ] not demonstrate a lack of continuity."  *Id.* at 476.  A hostile environment claim usually involves a continuing violation.  *Id.*  To determine whether the environment was hostile, the court should review the pattern and frequency of the harassment.  *Id.*  Additionally, the court should see if the employer tolerated employee harassment or whether appropriate action was taken. *Id.* at 479.  For the continuing violation doctrine to apply, the plaintiff "must demonstrate more than a series of discriminatory acts.  He must show an organized scheme leading to and including a present violation."  *Huckaby v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).  For the purposes of this motion, the Court will assume that Bustamante has sufficiently alleged a continuing violation of a hostile work environment such that all of her complained-of actions may be considered.

11

### 2.      The merits of the hostile environment claim

To maintain a suit for a hostile work environment, Plaintiff must demonstrate that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986)).   To establish a claim for hostile work environment, a plaintiff must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment;  (3) the harassment complained of was based on the plaintiff's membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Celestine v. Petroleos de Venez, SA*, 266 F.3d 343, 353 (5th Cir. 2001). In determining whether a work environment is hostile, all circumstances are considered including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). "To survive summary judgment, the harassment must be so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place." *Hockman*, 407 F.3d at 326. "

The environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993)).   Only substantial and serious incidents violate Title VII.   Minor

incidents like "teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788.  This allows courts to "filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (citations omitted).

It is important to keep in mind that Title VII does not provide relief from offensive comments unless they permeate and affect the work environment.  Comments must "be both objectively and subjectively offensive . . . that a reasonable person would find hostile or abusive." *Faragher*, 524 U.S. at 787. Recently, the Fifth Circuit held that supervisors calling the plaintiff "Che Guevara" and an "aggressive Hispanic" did not constitute a hostile work environment. *Vallecillo v. U.S. Dep't HUD*, 155 F.App'x 764, 767 (5th Cir. 2005) (unpublished).  The court reasoned that even if "these statements can be classified as racially offensive, they are not sufficiently severe or pervasive to constitute a hostile work environment." *Id.* Rather, "[t]he two statements related to race and national origin epitomize the type of utterances, epithets, and offhand comments that we have repeatedly stated were beyond Title VII's purview." *Id.*

Bustamante's evidence is not sufficient to meet this high threshold.  It is obvious from the evidence that there was tension in the workplace, and that there were groups of employees who did not get along with each other.[3]  There is no question that Bustamante's subjective perception is that

---

[3]Indeed, the evidence suggests that employee Penny Czaja eventually left the Hospital, according to Hartmann, because of the harassment from Bustamante and Amelia Munoz. Hartmann Depo. at p. 62.  Employee Dawn Lantz also left for the same reason.  *Id.* at p. 65.  So too did a Hispanic coworker, Sylvia De La Garza.  *Id.* at p. 63.  Erin Cates, the Hospital's HR representative, corroborated that the women claimed to have left because of Munoz and Bustamante.  Cates Depo. at p. 62.

she was treated badly because of her race and her age.  An objective view of the evidence, however, demonstrates that the environment was simply not at the level of hostility required by the case law to support this claim.  As the Supreme Court noted in *Faragher*, in making this objective analysis, the court is to look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  524 U.S. at 787–88.  The events detailed in the evidence were infrequent and cannot be described as "severe."  There is no evidence of physically threatening or humiliating conduct.

With regard to the comment that receptionist Sue Klinsiek stated that "We Anglos eat first," Plaintiff cannot make out a prima facie case as it is not clear that anyone other than Bustamante heard the comment, and she apparently did not find the comment significant enough  to report it to her supervisors.  Hartmann Depo. at p. 127.  Plaintiff has failed to present evidence that HCMH knew or should have known about this comment.  Indeed, the statement that a Hispanic client applying for financial aid could get a job at McDonald's, was not made to Bustamante, or even in her presence.  She only learned about the comment in the course of discovery in this case.  Bustamante did report the alleged comment by Klinisek that "your people smell."  Once HCMH learned of coworkers making comments about people smelling or how they should go work at McDonald's, the supervisors investigated and took action.  *Id.* at 116:23–125:25.  Indeed, the evidence indicates that the Hospital did not foster, condone, or permit racial slurs.  After Klinsiek used the term "wetback," she was immediately reprimanded and received a final written report.  Hartmann Depo. at p. 119–120.

Additionally, Bustamante complains of Regester and Klinsiek's reference to Hispanic clients coming to the Hospital as "Mexican." The Court agrees that a United States citizen of Hispanic descent could find this reference offensive. But while offensive, this statement was not directed at Bustamante, and is not enough to create a hostile environment.

Lastly, Plaintiff complains of an incident, which occurred in March 2009, after she filed her EEOC charge, in which she was brought to Porter's office, Porter slapped her hand down on her desk, and pressured Bustamante to sign a statement about Amelia Munoz. The Court finds that this action is insufficient to support a hostile work environment claim. *See, e.g., Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005). In *Septimus*, a male supervisor's two-hour "harangue" in female employee's office, his questioning her in "mocking tone," and his reference to her as "needy old girlfriend" were found not sufficiently severe or pervasive enough to make her working environment objectively hostile or abusive. The incident described by Bustamante was much less severe than that in *Septimus,* so it is clearly not enough to demonstrate a hostile environment.

Much of the evidence on which Butamante relies is best described as trivial. Only the most serious, pervasive environments will be found to violate Title VII; otherwise the statute would "become a general civility code." *Faragher*, 524 U.S. at 788 (citation omitted).

Considering all of the evidence, and taking all of that evidence in the light most favorable to Bustamante, she has failed to demonstrate that she was subjected to sufficiently severe or pervasive remarks or conduct such that it altered the conditions of her employment and created an

abusive working environment. For these reasons, Plaintiff has failed to establish a prima facie case of a hostile work environment.[4]

## B.      Disparate Treatment Claim

Plaintiff alleges that other employees were given credit for her work.  In the two incidents she describes, the Anglo employees were complimented for their collections work in Bustamante's presence.  There is no evidence that these employees received anything other than oral accolades. Plaintiff did not detail this event, which does not qualify as an adverse employment action, in her EEOC charge.  Thus it fails both on the merits and for failure to exhaust.

Bustamante also alleges she was demoted in October of 2008.  However the summary judgment evidence does not support her claim.  When asked at her deposition, Plaintiff stated that although her title was removed from her name tag, her pay was not reduced, her job responsibilities were increased, that she was not in fact given a different title, and that she remained at the same desk.  Plaintiff's Depo. at p. 185-187.  "To demonstrate the occurrence of an adverse employment

---

[4]In her brief, Bustamante also asserts that she was constructively discharged due to the hostile work environment, although she does not allege a separate claim of constructive discharge in her Complaint.  *See* Complaint at p. 3.  Because it is unclear what the status of this claim is, out of an abundance of caution the Court will address the issue briefly here.  A constructive discharge results when an employer makes working conditions so intolerable that the employee is forced to quit. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir.2004).  The test is "whether a reasonable persons in plaintiff's shoes would have felt compelled to resign." *Id.* The following factors are relevant: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration in original). Constructive discharge imposes an even higher standard than a hostile work environment claim.  *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 301 (5th Cir. 2001). Plaintiff has submitted no evidence that she endured any of the types of events listed above. Moreover, since the Court finds that Plaintiff has failed to make out a prima facie case of a hostile work environment, any claim for constructive discharge will also have to fail.

action, a plaintiff must show that he suffered an 'ultimate employment decision.' " *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citation omitted). "Ultimate employment decisions include actions affecting job duties, compensation, or benefits, such as hiring, granting leave, discharging, promoting, and compensating." *Davis*, 383 F.3d at 319 (citing *Banks v. East Baton Rouge Parish School. Bd.*, 320 F.3d 570, 575 (5th Cir.2003)). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). The Court finds that Plaintiff has failed to provide summary judgment evidence supporting her claim that she suffered an adverse employment action and was demoted. Rather, her job duties were changed slightly and she later received a raise. Thus, she cannot make out her prima facie case with regard to this issue.

Plaintiff also asserts she was discriminated against when her overtime calculations were questioned. First, Plaintiff has not exhausted this claim as it was not included in her EEOC charge. Second, Plaintiff admitted in her deposition that she had no evidence regarding whether younger non-Hispanic employees were also questioned about their overtime. Plaintiff's Depo. At p. 105. *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004). Third, Hartmann testified that Bustamante's overtime was questioned because it was excessive and she had not received prior approval for overtime as required. Hartmann Depo. at p. 145. Thus Plaintiff has failed to establish that she was treated less favorably than similarly situated employees who were not members of her protected class, and has failed to make out a prima facie case. *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003). Additionally, Plaintiff has failed to argue why it was inappropriate for her

17

employer to question her overtime.  Such an action is not inherently inappropriate, and Bustamante offers no evidence to rebut the Hospital's explanation for their actions regarding the overtime. *Davis*, 383 F.3d at 319.

Plaintiff also asserts that younger Anglo employees received help with their work when they got behind, and that she did not.  However, in her deposition, Plaintiff acknowledged that Lucinda Lofton, a Hispanic co-worker received help when she got behind.  Plaintiff's Depo. at p. 130. Plaintiff has offered no evidence that the failure to offer her backup was due to her race and/or age. She identifies employees whom she alleges were provided help, but none of these employees held the same job as Plaintiff.  Additionally, failure to provide help with one's work does not qualify as an adverse employment action. *Davis*, 383 F.3d at 319.  Plaintiff has failed to make out a prima face case.

Plaintiff also asserts that younger Anglo employees were allowed to leave their desks, while she was not.  However, Plaintiff fails to identify these younger Anglo employees, and thus fails to make out her prima facie case on this claim. *Davis*, 383 F.3d at 319.

### C.    The Retaliation Claim

Bustamante also claims that HCMH retaliated against her after she filed her EEOC charge on October 27, 2008.  The anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), is broader than the discrimination provision of Title VII, but Plaintiff must still "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006) (citations omitted).

Plaintiff ultimately quit her job at HCMH in March of 2009 and claims she was constructively discharged.

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she participated in a Title VII protected activity; (2) she suffered an adverse employment action by her employer;[5] and (3) there is a causal connection between the protected activity and the adverse action. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (noting retaliation claim under § 1981 is considered under same framework as Title VII retaliation claim). It is undisputed that Plaintiff engaged in an activity protected by Title VII when she filed a charge with the EEOC. However, the Court finds that Plaintiff has failed to make out a materially adverse employment action and a causal connection between that activity and the action.

Plaintiff's first retaliation claim is that HCMH gave her a poor evaluation on December 29, 2008. However, the summary judgment evidence shows that while Plaintiff did receive two "needs improvement" notations, the rest of her evaluation was positive, and she received a 2.5 percent merit raise out of a possible 3.5 percent. Viewing these events objectively, one evaluation containing constructive criticism, and giving a 2.5 percent raise, is not something that would dissuade a reasonable employee from engaging in protected activity. Indeed, the Fifth Circuit has held that a low performance evaluation is not an adverse employment action. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998). Additionally, Plaintiff claims that her raise and performance review were delayed in retaliation for her protected

---

[5]Although a retaliation claim need not be based on an "ultimate" employment decision, as with a disparate-treatment claim, to recover for retaliation the plaintiff must show that he suffered a "materially adverse" employment action. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). An action is materially adverse if the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.

activities.   However, she has offered no evidence supporting these claims, other than her own subjective belief.  *See Moore v. Solar Group*, 311 F. App'x 722, 724 (5th Cir. 2009) (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)).  Summary judgment is appropriate on Plaintiff's claims relating to her evaluation.

Second, Plaintiff complains that she returned from a five-week medical leave to five full weeks of accumulated work, and that she was expected to complete this work in three days without help or overtime.  Plaintiff claims that Klinsiek and other white employees were afforded help when they were absent, while Plaintiff was not.  Plaintiff asserts that these unreasonable work demands caused her to resign from HCMH and as such she was constructively discharged.

Notably, Plaintiff offers no evidence that HCMH required her to complete all her undone work in three days without overtime, threatened her with an adverse employment action, or in any way insisted that she complete superhuman tasks within a short time.  The only evidence offered to support Plaintiff's claims about her workload is an e-mail from Plaintiff's supervisor advising another employee that "Dora is now back at work and will get those to you" regarding a report of February numbers.  *See* Hezelett E-mail of March 3, 2009.  Per the summary judgment evidence, Plaintiff completed those reports within a week of her return to work.  *See* Bustamante e-mail dated March 8, 2009.  Hazelett did question Plaintiff's overtime, but in the context of encouraging Plaintiff to leave early on a Friday so that she could use up her overtime.  *See* E-mail Exchange of March 6, 2009.  Plaintiff has failed to establish that requiring her to make up her work would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Plaintiff has failed to offer summary judgment evidence that she suffered an adverse employment action, and thus cannot make out her prima facie case on this claim.  Summary judgment is appropriate.

D.       **Failure to Promote Claims**

Bustamante complains of three specific incidents where she was not promoted, allegedly because of her race or age.   Unlike her claim of continuing violations for a hostile work environment, a failure to promote or transfer is a discrete incident.   In her EEOC complaint, Bustamante references only one failure to promote incident.   The Charge states "In or around October 2008, I was denied an opportunity to apply for the Patient Representative/Customer Support position; instead, an Anglo employee was promoted, although she had less experience, abilities and time with the hospital than I have." *See* EEOC Charge.

A Title VII plaintiff must exhaust her administrative remedies by filing a charge with the EEOC before filing suit in federal court.   *See* 42 U.S.C. § 2000e-5(f)(1) (2006); *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997), *cert. denied*, 523 U.S. 1136 (1998). A failure to exhaust these administrative remedies deprives the court of jurisdiction over the claims. *Barnes*, 118 F.3d at 408; *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994).   As noted earlier with regard to the hostile environment claim, there is some leeway with regard to the specificity required of a charge of discrimination.   But Bustamante's failure to mention any other failure to promote claims, bars these claims.   A failure to exhaust deprives the Court of jurisdiction.   *Barnes*, 118 F.3d at 408.   Accordingly, the Court lacks jurisdiction to consider any failure to promote claim other than the 2008 incident listed in Plaintiff's EEOC charge,  and summary judgment is appropriate on these claims.

With regard to the 2008 claim, Plaintiff does not allege that she was qualified for, and applied for this job and did not receive the position; but rather, that the position was not posted and that Plaintiff could not apply.  Plaintiff also claims that various other positions were not posted and

thus she was not allowed to apply for those positions as well. The Court need not address these additional positions, as they were not contained in Plaintiff's EEOC charge. However, with regard to the 2008 Patient Representative/Customer Support position included in the EEOC charge, since Plaintiff did not apply for the position, she cannot make out a prima facie case for disparate treatment. Instead, and although not briefed in this manner, her claims are more akin to a disparate impact claim, essentially claiming that the Hospital's failure to post the position had a disparate impact on Hispanic or older employees.

To establish a prima facie case of disparate impact, a plaintiff must (1) identify the employment practice that has the allegedly disproportionate impact, and (2) establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). "Ordinarily, a prima facie case requires a showing of a substantial 'statistical disparity between protected and non-protected workers in regards to employment or promotion.' " *Id.* Thus, what Plaintiff would have to argue, and show statistical support for, is that by maintaining a policy of failing to post certain positions, HCMH has caused non-white older employees to not garner promotions. Plaintiff has failed to offer any evidence to support a prima facie case of disparate impact for the failure to post claims, and thus they fail on this basis.

### E.    The Intentional Infliction of Emotional Distress Claim

Bustamante's final claim is her state tort claim complaining that HCMH intentionally inflicted emotional distress upon her. For this claim, she relies on the very same facts that support her statutory claims. In *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), the Texas Supreme Court recognized that an IIED claim is "a 'gap-filler' tort, judicially

created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." In *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004), the Court further elaborated that:

> The tort's clear purpose . . . was to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied. . . . In creating the new tort, we never intended that it be used to evade legislatively-imposed limitations on statutory claims or to supplant existing common law remedies. Properly cabined, the tort simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results. Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.

(citations omitted). Thus, in *Hoffmann-La Roche* the Court held that the plaintiff could not pursue both an IIED claim and a sexual harassment claim under the Texas Commission on Human Rights Act ("TCHRA") against her former employer since the "CHRA provides a remedy for the same emotional damages caused by essentially the same actions, there is no remedial gap in this case and thus no support for the award of damages under the intentional-infliction claim." *Id.* at 450. Because Bustamante relies on the same facts for the IIED claim as she cites in support of her Title VII claims, the IIED claim is not an available remedy under Texas law.

## III. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS that the Defendant's Motion for Summary Judgment (Clerk's Doc. No. 18) be GRANTED as to all claims.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 29th day of September, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE